(47 South. 759.)

No. 17,280.

## BISHOP v. SHERBURNE.

(Nov. 16, 1908.   On Rehearing, Dec. 14, 1908.)

1. ELECTIONS (§ 98*)—REGISTRATION OF VOT-
ERS—PERSONS ENTITLED TO REGISTER.

The test required, by article 197, § 3, of the Constitution, and Act No. 98, p. 148, of 1908, to be applied to applicants for registration, is not intended as a mere formality, but is the result of the most serious and protracted deliberation in the convention by which the Constitution was adopted, and must be literally complied with.   The applicant must not only demonstrate his ability to read and write, but, he must do so by reading, and filling the blanks in, the particular form of application prescribed, the doing of which requires, not only the ability to read and write, but sufficient intelligence to enable the applicant to compute the number of years, months, and days of his life.

[Ed. Note.—For other cases, see Elections, Dec. Dig. § 98.*]

On Application for Rehearing.

2. ELECTIONS (§ 107*)—APPLICATION TO COM-
PEL REGISTRATION—COSTS.

Applications to compel registration of qualified voters or to purge the registration rolls of names illegally placed thereon are without costs both in the court below and on appeal.   Const. art. 201; Act No. 199, p. 461, of 1898, §§ 18, 19; Ballard v. Puleston, 113 La. 235, 36 South. 951.

[Ed. Note.—For other cases, see Elections, Dec. Dig. § 107.*]

(Syllabus by the Court.)

Appeal from Twenty-First Judicial District Court, Parish of Iberville; Calvin Kendrick Schwing, Judge.

Mandamus by Thomas C. Bishop to compel Henry N. Sherburne, registrar of voters, to register him as a duly qualified voter. The writ having been denied, Bishop appeals. Amended and affirmed.

E. N. Pugh & Son and Walter Lemann, for appellant.   Edward Blount Talbot, Paul Geddes Borron, and Frederic Peter Wilbert, for appellee.

## Statement of the Case.

MONROE, J.   Relator sought by mandamus to compel the registrar of voters for the parish of Iberville to register him as a duly qualified voter of that parish, and, the writ having been denied, he has appealed. It appears from the evidence in the record that he was refused registration because he failed to comply with the law in the matter of filling out his application; his own testimony upon the subject being as follows:

"Q. Did the registrar register you?   A. No, sir, he handed me an application and told me to fill it out, and I told him I could not see very well, and I held it to the light and wrote on the wrong line, and he told me it was not correct, and I rubbed out 'Louisiana' and put 'Texas,' where I was born, and he gave me another blank and told me to try again, and I could not see, and that was bad, and he said, 'try another one,' and I said it was hardly any use, and there was a gentleman sitting inside the door, and he told me to try it.   Mr. Kahn gave me the blank, and I asked him to give me an idea, and he told me it was against the law and (he) could not do it, and I filled it out the best I could, and he said it was not correct, and I walked out."

Ernest Kahn testifies that relator applied to be registered, and was refused, because "he failed to comply with the law in filling out blanks"; that he did not ask to be registered under the disability clause; that he said he could not see very well, and that witness called his attention to a pair of glasses that were lying on the table near him. Relator says that he did not ask for glasses, and it does not appear that he made any attempt to use those that were offered to him.

From the three "spoiled" applications, it appears that, in No. 1, the applicant failed to insert the state, county, or date, of his birth, or the number of the precinct from which he desired to be registered; in No. 2, he appears to have inserted "Louisiana" as the state of his birth, and  to have written "Texas" over it, but he failed to give the county or date of his birth, or the date at which he began to live in Iberville parish, or the number of the precinct from which he wished to be registered; in No. 3, he inserted "Iberville" as the county of his birth, but failed to give the state or the date.   It

may be added that, in both Nos. 1 and 2, he failed to fill in the date of his application, though that was inserted in No. 3.

## Opinion.

The question at issue is controlled by article 197, § 3, of the Constitution, and section 29 of Act No. 98, p. 148, of 1908.

The Constitution provides that:

"He" (the applicant for registration, who offers to register as a person who can read and write, and does not offer to register under either of the other sections) "shall be able to read and write and *shall demonstrate his ability to do so*, when he applies for registration, by making, under oath administered by the registration officer, or his deputy, written application therefor, in the English language, or in his mother tongue, which application shall contain the essential facts necessary to show that he is entitled to register and vote, and *shall be entirely written, dated and signed by him*, in the presence of the registration officer, or his deputy, without *assistance or suggestion from any person*, or any memorandum, whatever, *except the form of application herein set forth;* provided, however, that if the applicant be unable to write his application in the English language, he shall have the right, if he so demands, to write the same in his mother tongue from the dictation of an interpreter; and if the applicant is unable to write his application by reason of physical disability, the same shall be written at his dictation by the registration officer or his deputy, upon his oath of such disability. The application for registration, above provided for, shall be a copy of the following form, with the proper names, dates, and numbers substituted for the blanks appearing therein, to-wit: I am a citizen of the State of Louisiana. My name is ————. I was born in the State (or country) of ——, parish (or county) of ——, on the —— day of ——, in the year ——. I am now —— years —— months and —— days of age. I have resided in this State since —— in this parish since ——, and in precinct No. ——, of ward No. ——, of this parish since ——, and I am not disfranchised by any provision of the Constitution of this state." (Italics by the court.)

Section 29 of Act No. 98, p. 148, of 1908, is framed in almost the identical language of the Constitution, the only difference of any consequence being that, under the statute, the applicant may make the required oath before the "clerk" of the registrar as well as before the registrar himself or his deputy.

Upon the case presented, it is clear that the registration of relator was properly refused. The constitutional test was not intended as an idle form, but was the result of the most serious and protracted deliberation in the convention by which the Constitution was framed, and was intended by that body to be literally complied with, as is evident from the language and particular requirements of the article in which it is incorporated. The applicant "shall demonstrate" his ability to read and write, not by reading or writing anything that he may choose, but by reading, and filling the blanks in, a form prescribed, ipsissimis verbis, by the Constitution itself, the doing of which requires, not only the ability to read and write, but likewise intelligence sufficient to enable the applicant to compute, at least, the number of years, months, and days of his life. In the instant case, the applicant came to the office to register as one who could comply with those conditions, and he made his application on no other basis. It is true that he said, after the failure of his first attempt, that he could not see "very well," but he had already demonstrated that he could see to read the printed matter on the form that he had used, and does not pretend that he could not have seen better if he had used his own spectacles (assuming that he had a pair) or those that were offered to him.

Judgment affirmed.

## On Rehearing.

LAND, J. In this case the application was not "dated and signed" by the applicant as required by article 197, § 3, of the Constitution of 1898, and in neither were all the blanks properly filled in. The first defect is necessarily fatal. The form of the application as given does not nullify the requirement of date and signature. Plaintiffs' suits were dismissed with costs in the court below. This is assigned as error for the first

time in the application for a rehearing. Article 201 of the Constitution in such cases as these provides for an appeal to the Supreme Court, and declares that "the General Assembly shall provide by law for such applications and appeals without cost." This the lawmaker has done. See Act No. 199, p. 453, Laws 1898. The question of cost in such cases does not depend on the result of the suit, as the party cast is given the right of appeal "without cost." Section 19 of Act No. 199 of 1898 provides for the recovery of costs against the supervisor, assessor, or clerks of registration only where they have "wilfully violated a plain duty but not otherwise." The same article and the same statute gives to any citizen the right to apply to the courts for the purpose of purging the registration rolls. In Ballard v. Puleston et al., 113 La. 235, 36 South. 951, this court held that the defendant, who had been cast in both courts, could not be charged with the costs for the transcript of appeal saying: "The charge was wholly unauthorized. Const. art. 201; Act No. 199, p. 461, of 1898, § 18."

It is therefore ordered that the judgments in both cases be amended by dismissing the suits without costs, and as thus amended be affirmed; and with this amendment of our decree the applications for a rehearing are refused.